Good morning ladies and gentlemen. Our first case for this morning will be United States against Evelyn Borrero and others, and I believe we'll hear first from Ms. Eisenman. May it please the court, my name is Vanessa Eisenman and along with Michelle Jacobs I represent one of the defendant appellants, Yalitza Exclusa Borrero. I will be discussing the joint sufficiency of the evidence arguments, Ms. Garst will be discussing the joint sentencing arguments, and Mr. Ansell will be discussing his client's federalism argument. This case is unusual due to the government's multiple concessions made on appeal, the biggest of those being on count two, where the government admits that the only theory mentioned by the district court in its rule 29 decision is legally erroneous under Cleveland versus United States, and that is because titles, registrations, and license plates are not property for purposes of the mail fraud statute. But do I remember correctly that the indictment does mention at some point lying in conjunction with these applications about such things as the value of the vehicles? Yes your honor, that is correct. Paragraph 22 or something? The indictment does mention that. If you look at paragraph 9 of the indictment, which is in our assisting illegal aliens in violation of immigration offenses by the use of several means, and one of those means was undervaluing vehicle purchase prices. But very importantly your honor, in paragraph 10 right after that, it says that it alleges that all of those means were all in furtherance of, all in an effort, excuse me, the quote is all in an effort to obtain motor vehicle license plates, registrations, and titles. So it does mention vehicle purchase prices, and that was something that was mentioned at trial, but that was never a separate conspiracy to undervalue vehicle purchase prices to defraud the state of Indiana out of sales tax revenue, which is what the government contends on appeal. That was never the theory, and the reason that you know that for sure is by looking at the district courts rule 29 decision, because that is not mentioned at all in there. Again, these were what the government alleged is that this was a conspiracy. If you look at the government's closing argument, this is a good example of kind of laying it all out. This was a conspiracy to secure license plates, also registrations and titles, for illegal aliens and telling a bunch of lies along the way. Right, I want to jump up to one of your other points, because one of the things you talk about are the jury instructions, or I mean collectively all of you, and you know it's certainly true that the jury instructions don't reflect the Cleveland decision, but it had been decided years before. Why don't the defendants bear some responsibility for that omission as well? Because this is the government's case, Your Honor, and the government... No, I know, but you're in a sense conceding that there might have been a theory under which there would have been substantial evidence, and even that that theory is, I won't say emphasized, but is reflected somewhere in the indictment. And so if you move from ordinary review to something more like plain error review, then I'm not sure why there'd be some gross miscarriage of justice to say that there's something going wrong here. Well, it's important to emphasize here, Your Honor, another concession by the government, and that is the government concedes that the instructions allowed the jury to convict on an invalid Cleveland theory. I don't think that point can be emphasized enough. For that reason, the instructions were legally erroneous, Your Honor. And so the only question is whether that... Without objection, though, on that basis by the defendants. That is correct, Your Honor. We concede that point, that there was no objection, but this was not waiver. This was not any sort of an at trial. Defense counsel missed it, but the government missed it, the district court missed it. Cleveland is hardly the first decision. Cleveland affirmed the law of the Seventh Circuit. It's been the law of the Seventh Circuit since 1989. I mean, it's an unbelievable indictment, and for the prosecutor and the defense to miss a point that has been established since 1989, it's very difficult to understand. Yes, Your Honor, I agree with that. But the point is here that it was not some sort of an intentional waiver. This was not a strategy decision by the defendants. And getting back to Your Honor's point, we have the government conceding that the instructions allowed the jury to convict under the Cleveland theory. So the only question, then, is even assuming that this valid theory was presented to the jury, which the defendants contend it absolutely was not, but even assuming that that theory was presented along with this invalid theory, were the two theories coextensive such that any plain error was harmless? And as we detail in a brief, that it simply could not be said that way. The question, as I understand it, is not so much whether there was plain error, but whether there was waiver. Did the defense approve these jury instructions? Did the defense prove the jury? I'm sorry, Your Honor. Approved. Approved. Approved. Yeah, there was no objection by the defense. It's not simply that there was no objection. Did the defense approve? That's what I'm asking. Are we here on a forfeiture possibility, or are we, or do we have a waiver? This is forfeiture, Your Honor. This is forfeiture. This was not a knowing, intentional... Forget about intent. I'm just asking whether the defense stood up and said to the district judge, this instruction is fine. Yes. Yes. So we have a waiver. No, we The defense stood up and said... I don't think standing up and saying this instruction is fine. Is anything ever other than a waiver? I disagree, Your Honor. Well, you can disagree from now until the cows come home, but it's still a waiver. And then the question is, what happens if there's an erroneous instruction that the defense has waived, but which underlies, but which if followed, produces, let us say, a conviction of a non-crime, since that's the result of Cleveland? That's a legal question that follows from the waiver. But again, Your Honor, we only get to the jury instruction question if you were to find that this other valid theory was presented to the jury. It simply was not. And look at the district court's Rule 29 decision. It was not presented to the jury. It's not in opening. It's not in closing. It's not in the indictment. And for that simple reason, it was not defended by the defendants. Well, in some ways, you're saying, I mean, maybe at a step earlier than the one Judge Easterbrook was just talking about, that the whole prosecution was for a non-crime. So maybe it was a non-crime after the waiver, and it was a non-crime before the waiver. And the question is really, how far can waiver go if it shouldn't have been brought at all in this theory? You know, you've been indicted for wearing a gray suit today, and it's fine to wear a gray suit. So how can you be convicted for that? That's the kind of theory you're urging, I think. Yes, Your Honor, that is absolutely correct. We're saying this theory was never presented, was never before the jury. The only theory that was presented, the only theory that the jurors could have convicted on was a legally invalid one. And therefore, the count to convictions need to be vacated with instructions to enter judgments of acquittal. So if we've got that far, what do we do with the other count of the indictment, the mail fraud count? You mean the immigration count, Your Honor? I'm sorry to interrupt. No, no, go ahead. The conspiracy to commit mail fraud. So you have two counts with this indictment? Correct. So if we were to agree with you about count one, what would happen to count two? Oh, I'm sorry, Your Honor. Count two was the mail fraud conspiracy? Right. Okay, so now you would like to know about count one? Yes, I would like to know. So in the immigration offenses, there was also many concessions made by the government here. The government says that this is not a case about harboring. They admitted that at trial. This is not a case about encouragement or inducement to come to or enter the United States. So we're down to shielding and we're down to encouragement to reside in the United States. Right, and here's my thought about encouraging to reside. We live in a country which, in my personal opinion, has generally a pathetic system of public transportation. Most people need cars to be able to get to work. And in fact, even people who are convicted of driving under the influence of alcohol, et cetera, related offenses, beg the judges to give them some temporary kind of license. And I understand that tags on a car are not absolutely essential in every case to work, but it sure helps. And it seems to me it's reasonable to think that there are plenty of people in this country unlawfully who don't have a handy brother or friend who are willing to say, here, put my tags on your car. And by the way, it's a pain in the neck if somebody else has your car because you find out about all of their traffic offenses and parking tickets and everything else. So, which is all to say that I think getting a license plate on your car in fact facilitates the ability to work in the country and facilitates thus the ability to reside in the country. I disagree, Your Honor. This is this court's first opportunity to pass on a case under the reside prong. But other circuits have found that reside means facilitate the ability to live in the United States indefinitely. Right. And so having a job where you can earn some money it seems to me does precisely that. But, Your Honor, the other cases under the reside prong have upheld convictions in your sister circuits for having false documentation, false social security numbers, false citizenship applications that were all used evidence was put forth in the trial that those documents were used specifically for a job or for some sort of housing. And I have no quarrel with any of those cases, but this is a different situation and I just don't understand why having a car that to the, to all outward appearances for the police officers and for all I know for all legal purposes is a legitimately licensed car doesn't similarly help somebody stay in the country indefinitely because they can work. Your Honor, reading, kind of reading reside the word reside, living indefinitely, reading that out of the statute is very dangerous. I can read that out of the statute. I don't think people can stay for a long time without some source of income. I would agree with that, Your Honor, but these documents were not used to acquire income. There was not a shred of evidence that anyone used these documents, which again this was not a driver's license. This was not a social security card. No, it was something that allowed you to drive your car around and I guess I'm, I mean it's a crazy theory, but it seems to me that having a car that you can use to get from your home to a place of work is something that facilitates long-term residents in the country. Well again, I would say, Your Honor, what you're talking about at least sounds to me a little bit more like transportation than it does aiding to reside and that, don't forget that's a different subsection and I'm sure Your Honor hasn't forgotten that, different subsection of the statute and we don't want to reside to swallow that section either. Another point is just what the evidence showed at trial. Again, these documents were not used, were not shown to be used to acquire work, to acquire housing, and they certainly, and Mr. Tabora, again, what Your Honor was referring to, the only actual customer witness for the government testified that he didn't need these documents. Well he happened to have a handy brother or whoever, you know, relative who said fine, you know, drive my car, but I don't know, I mean, reside means something right, and if some sort of action is being done, you know, the interesting thing on the reside part of the statute anyway is that a lot of the things that fall there are things that in other contexts are not illegal. Providing housing for example, you know, there are cases, well it's not illegal to provide somebody housing but if you provide an illegal alien housing so that they can have a place to live, it might fall without statute. And don't forget, Your Honor, also that another one of our arguments is that all of our discussion has been assuming that the government actually proved that all of these, all of the defendant's customers were illegal aliens, and please keep in mind our argument that even the district court acknowledged that the absence of a social security number does not equate to an illegal alien. That's certainly true. And I will pass the argument to Ms. Garst. Thank you. May it please the court, my name is Hannah Garst, I represent Louise Montez Marino, and I'll be arguing on behalf of all the defendant's joint sentencing issues. The defendant's sentences should be vacated and remanded for a new sentencing hearing because the district court's in proper inclusion of four enhancements, and this was not harmless error. The government has conceded that these four enhancements were error and that they added 10 or 12 levels to the defendant's offense levels. But they argue that the error was harmless. The question is not whether the sentence is now reasonable under the newly calculated guidelines for the government, the question is whether these 10 or 12 levels affected the selection of sentence itself. For the government to state that the significant decrease of 10 or 12 levels amounts to harmless error is patently wrong. The district court used the guideline range as an initial benchmark and starting point when coming up with each of the defendant's sentences. He discussed the 3553A factors in conjunction with the guidelines and what they stated. But only after he has a fairly lengthy discussion of the guidelines. Correct, Your Honor. Calculation. Correct. And if you refer to page 20 of our reply brief where we lay out the government's determination of what they believe the guideline range will be versus ours, you can see that there's many factual disputes at play here, and it's not clear where the district court would ultimately end up. But the district court in deciding its sentence gave significant variances downward for each of the defendants ranging for the most part from 60 to high 70% below the bottom of the guideline range. This is not a case where he gave sentences within the guideline ranges. And our position is that the selection of sentence clearly derived from the advisory guideline range that the district court believed that was correctly calculated. This is not a case like Abbas or Anderson where the district court recognized there were disputed guidelines and gave some sort of articulated response to the specific guidelines and how if it didn't apply or if it did apply depending on what the district court decided. But the government has put all its money on the card where the district judge says at the very end, these are the sentences I think are the right sentences no matter what. So what's your response to that? Well your honor, for the district court to give what this court has labeled a blanket statement like that, which in this case was exactly the same for every single defendant, there was no differences. For the district court to do that we believe that they have to articulate the specific guideline that they're looking at. For a district court to just say I would give the same sentence regardless really doesn't fall in line with Gaul. That you have to correctly calculate the guidelines. The district court must understand what the guidelines recommend in the first instance before it can decide whether or not to vary upward, downward, or give a guideline sentence. It's only after the correct calculation that the district court can take into account the 3553A factors. In Verdoliak this court quoted a Tenth Circuit case and said, it's hard for us to imagine a case where it would be procedurally reasonable for the district court to announce that the same sentence would apply even if the correct guideline calculations are so substantially different without cogent explanation. It essentially questions whether the district court genuinely considered the correct guideline calculation. And in this case, despite the district court's statement, there's no way that they genuinely considered a corrected guideline. There was nothing in the record that shows that the district court even remotely contemplated that 10 or 12 levels could be reduced from the advisory guideline range that it calculated. And if you look, say for example, Mr. Omar Duran, if you look at even what, initially his sentencing range was 235 to 293. He received 84 months. Even if you accept what the government says to be true, which of course we do not, but his guideline range would be reduced to 97 to 121 months. He received a 65% reduction from the bottom of the original range. For the government to put all its weight on the fact that the district court said it would give a same sentence is kind of unbelievable, Your Honor. Especially given the very downward on these cases and completely expressed his desire to do so. Furthermore, if the district court wants to insulate the sentence or to help this court understand that if it goes back, we're going to give the same sentence, what it should do is it should articulate the specific section that it's referring to explain why they would arrive at the same sentence, whether that would be discretion 3553A factors, however it wants in order to give this court the understanding that it needs to say that this section did not affect the selection of sentence. But you're not arguing, I take it, that when there's a mistaken calculation of the guidelines that gets the process going in the wrong direction, that it's never possible for the district judge to say but I've now considered everything and this is going to be my sentence no matter what. Or are you arguing that? No, we're not arguing that. What we're arguing is that here with a 10 or 12 level decrease, it's just too big. And the government's conceded error on all four of the enhancements. And I believe we have a different case here. Unless there's further questions, I'll reserve the time for Ms. Eisenman's rebuttal. Alright, thank you. Mr. Ansell. Good morning, Your Honors. May it please the court. I represent Evelyn Barrero and I raised the argument that this prosecution interferes with the principles of federalism. That argument was born of a motion to dismiss where the government argued in response. And essentially the motion to dismiss was even if we admit or even if we concede that yeah, they helped these people register their vehicles and get titles for their vehicles. That's still not enough to prove harboring, concealing, shielding But your argument ignores the fact that this is just the use of a state offense as a predicate to a federal criminal prosecution. And I can't even imagine the number of federal statutes that your argument would throw out the window if that's not possible anymore. It happens with the Hobbs Act, it happens with any number of things. It's certainly possible, Judge, but it's written into the statute. In this instance it's not written into the statute and what you have is not a state law but a state agency. Why does that matter? I mean if the mechanism for violating the immigration laws in any particular case, I mean I'm not even worrying about the facts of this case, happens to be some violation of state law, why isn't that something that Congress can choose to criminalize? Congress can choose to criminalize it but they didn't choose to criminalize it. This is something that was unanticipated by Congress Why? I don't understand. So suppose somebody as Ms. Eisenman argued, suppose a person gets a phony Indiana driver's license and there are cases that say driver's licenses are the kinds of things that facilitate one's residing in the country. It certainly violates Indiana law to do that. Sure. It also violates other laws. I don't think that example is applicable though because there was no violation of Indiana law in this instance. What was violated was the expectations of the BMV. They decided to disallow anyone who doesn't have a social security number That's a different argument. That's not a federalism argument. That's just an argument was there anything going on here that was illegal? As I said, I don't think that finishes the discussion because there are legal things that could also allow somebody to violate 1324. I think the federalism argument is clear if you take the example of something like getting a library card. Let's say that the local library district decided that you need a social security number to get a library card and there was perhaps a nonprofit that helped illegal immigrants and their children to be able to access the services of the library and to then criminalize that effort would be an expansion of the statute. It would be an unprecedented, I think, an unprecedented interpretation of the statute. But what does that have to do with federalism? I understand an argument that there was no violation of the federal law, but your constitutional argument is that even if there was a violation of the federal law Congress lacks the power to prescribe this even with respect to aliens. I don't think I'm making that argument. I don't see how that argument can be reconciled with Gonzalez against Raich. I agree with you, but I don't think I'm making that argument because Congress didn't specifically state that. Congress set out these parameters whereby one could violate the law by inducing or encouraging, but what happens is inducement is suddenly created out of a situation that's born of a state agency policy decision. But your library card example might not fit that, whereas driver's licenses or other things, and so now we have to decide with this odd situation of Indiana law whether making yourself into an LLC and then getting a license plate in the name of your company is a problem. Well, it's certainly legal under state law. I don't know of anything in corporate law that makes it legal. Suppose Indiana decides that it wants to acquire cement for its highways by collusive bidding and the national government then files suit under the antitrust laws saying collusion is a violation of federal law. Any problem? I don't really understand that example, Judge. That's a perfectly standard application of the Sherman Act. Okay. I think this is maybe more akin to the U.S. v. Edmonds that I did not cite in my brief, but I cited below in my motion to dismiss where the government tried to prosecute a union for engaging in violence to try to force acceptance of the Collective Bargaining Act. They charged that into the Hobbs Act and the Supreme Court agreed with the district court's dismissal that that was beyond the scope of the Hobbs Act, that the definition of extortion did not include violence to gain leverage in the union agreement. It had nothing to do with federalism. It had to do with the scope of the federal statute. I think the federalism argument is a bit vague because there is... Well, that's true. Maybe you should wrap up on that happy note. I think your time is up. Okay. But if you have a final thought you'd like to leave with us, that's fine. Well, my final thought is that in this instance, we have a prosecution that's born of a state agency policy decision that happens to end up being an immigration policy decision, so any state agency could suddenly condition services on a valid Social Security number and then efforts to circumvent that, even efforts that are legal under state law, would then be violations of Title VIII. Okay. Thank you very much, Mr. Ansel. Mr. Holler. ... ...  ... Good morning, Your Honors. And may it please the Court. David Holler on behalf of the United States. I guess I would propose to review the issues in this chamber. Mr. Holler, I'm worried about how far your argument under 1324 goes. Suppose somebody shows up at the office of his physician and says, I have high blood pressure. I need treatment to avoid the long-run risk of a heart attack. And oh, by the way, I do not have a visa to be in the United States. Can the physician provide medical service? I would think that the physician probably can provide medical service because I don't think that that's going to fall under the ... Why is that any different from providing title plates for a vehicle? If the physician said, no, I can't and no physician in the United States can provide medical service, you have to go home. If the physician provides medical service that encourages the alien to remain in the United States. And I think you can see where I'm going. The alien goes to his grocery and says, I need food. If you provide food to an illegal alien, you encourage him to remain in the United States. Your argument seems to say that it is a felony for anyone to provide goods or services to any illegal alien. And I wonder whether that can possibly be true. No, that's not true, Your Honor. Then why is titling of a car different than medical service? It's much more important to be able to get medical care and food to remain in the U.S. than it is to get license plates for a car. I think it's important to realize, Your Honor, that the argument in this case is following on the NJIA argument, where the 11th Circuit held that ... I don't care about the 11th Circuit. I'm asking you to find the limits of your argument in a sensible way. And you can't tell me that it's more important to living in the United States to have a car than to have food. So if you really want to say that anything that encourages an alien to remain in the United States, I think you have to say it's a crime to sell food to a known illegal alien. You have to give me a stopping point that doesn't get there. Well, I think that the Court has to try to read the statute in a way that it criminalizes some conduct. So there has to be some level at the top. It can't be read to the extent to say that nothing one can do can do that. Many courts have already read this to say providing illegal social security numbers, providing other illegal documents to aliens that encourages them to substantially reside. There's nothing illegal that Indiana provided. It doesn't violate state law. It doesn't violate any federal law other than your theory about 1324. And that's why I gave you things like food and medical care, because those aren't illegal. And if you want, by the way, my follow-up question, my follow-up question is going to be, the state of California now makes it perfectly legal for known illegal aliens to get driver's licenses, vehicle titles, license plates. On your theory, is every single employee of the California Department of Motor Vehicles committing a federal felony? No, it is obviously not, Your Honor. Why not? Because in those instances, Your Honor, it is legal to provide those services. It's legal to provide these services in Indiana. Well, it's illegal to form a corporation for no purpose that is legal. And in this instance, these corporations The purpose of owning a car is legal. Lots of lawyers incorporate for no purpose other than to run the business of law. But nothing here showed that they were involved in the trappings of any sort of business. If it is running a business and then is using a car through that business, that's a proper corporation. Do you have any decision of an Indiana court saying that it is a violation of Indiana law to form an LLC for no purpose other than to own your car? No, Your Honor. Is there any statute you rely on for the proposition that it's a violation of Indiana law to have an LLC for no purpose other than to own your car? The only statute that we rely on is the one that we cited in the Indiana Code, Section 23-18, 2-1A2. A limited liability company may be organized for any lawful purpose. Yeah, and owning a car is a lawful purpose. What's the problem? Well, in this instance, it is not lawful for an illegal alien to own a car in Indiana. Why? What makes it unlawful? The part that requires that they have a social security number under Indiana law in order to obtain a title or a license? Yes, and it's perfectly lawful to own a car if you have a taxpayer identification number and use an LLC or a corporation. Well, a taxpayer identification number is not lawful. I must say, I'm totally flummoxed by your line that 1324 makes the federal crime contingent on a violation of state law. First, I don't see the violation of state law, but there's nothing in 1324 which makes the federal crime contingent on a violation of state law. It just says it's illegal to encourage aliens to remain in the United States. Period. And I recognize that, Your Honor, but the statute on the encouragement and inducement prong, you have to encourage or induce an alien to reside in the United States. So, what the courts have said is that if you are substantially helping to facilitate an alien's ability to live here indefinitely, you are violating the statute. Then, you have to answer my question about food and medical care by saying that's a crime. And you have to answer my question about California by saying every employee in California knowingly issues a driver's license to an illegal alien commits a federal felony. And you seem totally unwilling to say that. I think that the one-time provision of food or the one-time provision Not one time. I go to my corner grocery. I buy there every week. I tell them I'm an illegal alien. And if a grocery store advertised to the illegal immigrant community in Mexico and said come here and you can get free or reduced price groceries and people flooded across the border to that grocery store for that purpose I think we could in our terms then. You just deal with the question I gave you. There's no encouragement of moving across the border. Grocery deals with people who are already in Indiana. Just like our defendants dealt with people who were already in Indiana. There's no suggestion they're paying smugglers to get them across the border. A person comes and says I need your service. If I don't get your service or something like it I'll obviously have to leave. I need your service. I need to eat. I need medical care. I need a car. Your position is that if the statement is I need a car and the service is provided that's a federal crime but it's not a federal crime if the service is food or medicine and I don't comprehend why that would be. I understand that your honor. I understand your position. The arguments that we have made have been for relying on the long term effects one and the advertising and the encouragement two. That's what we've relied on. If the court feels that that's insufficient that's why... Safeway advertises it says you have a need for groceries. We'll supply it. Well that's a general advertisement. We're talking about specific advertisements that were targeted specifically to the immigrant community. Well to the Spanish speaking community actually which might not even be the immigrant community. Safeway puts ads in Spanish language. There were a couple of jumps in the reasoning the government engaged in. A. Assuming that everybody who speaks Spanish must be an immigrant. B. Assuming that everybody who's an immigrant must be illegal and we of course all know that neither of those is true. That's correct your honor. There are jumps that were made in this case. So the bottom line is that your best theory was being defrauded on tax revenue which of course was never argued. That's the big hole in this case. That's the big problem. That you have some evidence on. Those other cases you cite on the shielding and encouraging. None of those cases are like our cases. They don't give us anything to distinguish. I've provided the best that I can in the brief Judge Williams. No I've got one more question for you. You show up at the kiosk of the Chicago Transit Authority and say well I can't get a car legally in Illinois. But I would like to take the L. And you say I'm an illegal alien. Please sell me a transit card. And the person in the booth sells a transit card. Federal felony? There's no encouragement or inducement there. That would not be. Now if you start to trace the hypothetical around. Why is that any different? Judge Woods said you know look transit systems bad. A lot of people need a car to go to work. But in cities like Chicago you can go to work on the subway, on the elevator, on the metro, or by bus. And so providing somebody with a transit card enables them to go to work. And we know that working is illegal. And yet you tell me selling the transit card doesn't violate the statute. It looks like your theory of 1824 covers this prosecution and nothing else similar to it in the world. And that can't be an intellectually sound way to understand that statute. I agree that is not an intellectually sound way. That is not the theory in full in this case. But as I stated if there was an organized attempt by a community to provide immigrants with a large quantity that is where we would be. So take Judge Easterbrook's example. You form an LLC to get transit cards. To buy transit cards. To give to a community. Yes Your Honor. Under our theory of the case if a company formed a group to form LLC's to help conceal and hide people so that they could obtain transit cards that would fall under the statute. Or one company decides to buy 100 Ventra cards for the CTA and then they resell them to people. Well to the extent I mean to the extent that this is. Look I recognize the problems with this case Your Honor. I do recognize those problems in full. But at the same time there are schemes that are done. And if someone had done this in a way to allow aliens to not present themselves personally to the transit authority. Had done them all in the names of some faceless you know 7th Circuit LLC company so that nobody can detect and find those aliens. I hope that the court will not use this case to state something so broadly that it sweeps out the government's ability to do anything in those sorts of cases that do occur. And of course that raises the point that your opponents have mentioned that to the extent you're worrying about concealing or harboring which is apparently not this case this is a very bad case for concealing or harboring when people are putting down their own names for the LLC in their own addresses and are taking advantage of this particular form. Look there are people who are arguing in our courts every day as Judge Easterbrook pointed out who are PC's or LLC's and maybe it's just for owning a little bit of property that you're taking advantage of that legal form or maybe it's something else. And some of these PC's and LLC's provide legal services to no one illegal aliens. They do indeed. Yeah. If I could move on to the mail fraud counts your honor I mean I recognize the hypotheticals I recognize where those can go with this case. But I do think that on the mail fraud count your honors to the extent that Ms. Deisman is suggesting that the sales tax fraud theory was not in the case that is a vast overstatement. It's not a vast overstatement. If it's there at all it sneaks in at the corner I mean I looked at the indictment and the problem is the indictment doesn't ever say that the point of this scheme was to defraud the state of Indiana of some tax revenue. We don't know how many out of this whole number involved understatements of value this group of people were probably buying fairly low value vehicles anyway and so I'm worried about the notice frankly for the defendants to realize what exactly they were supposed to be defending against because if this group of people were all supposed to just out of spite against the government of Indiana deprive it of some tax revenue that's one thing. But I don't see that. Well I disagree with that Chief Judge Wood. This was in the case and essentially the way it's in the case is this was pitched and it was stated in the statements of government counsel closing argument page 31 this was an effort to defraud the BMV and the indictment lists multiple ways that the BMV was defrauded and as we know for whatever reason Cleveland was missed and some of those ways of defrauding the BMV are invalid. Not most of them. One of those ways. All but one. One out of three. Well I would say there essentially were three ways that were three lies that were told to the BMV. There were the lies about who actually was buying the car. There were the lies about the insurance and there were the lies about the sales tax fraud. And we presented those three versions. We presented it repeatedly. Well the jury instructions don't mention the defraud amount of taxes do they? They just say defraud out of money and property. So all we know from the jury instructions is that the jury found that the things identified by the instructions which don't include cash. Well money I mean it says defraud out of money or property. Now in the first point on the instructional issue the issue is waived. The defendants approved the instructions. The instructions say defraud out of money and property. But we still have the rule 29 problem. We do your honor and there is more than sufficient evidence in this case to find that these defendants fraud. Just didn't match up to the instructions. I'm sorry? The evidence just didn't match up to the instructions. I want to say counsel it is just beyond me how a blunder like this can be made. The theory of this indictment is so blatantly inconsistent with the governing law. Has been inconsistent with the governing law since 1989. The idea that somebody could be convicted of something that we said in 1989 just wasn't a crime and the Supreme Court said in 2000 and then have the conviction affirmed on the ground that maybe the jury heard something collateral but wasn't really told about is very troubling. You can't run a criminal justice system that way. So maybe the thing to talk about is whether this is a rule 29 situation or whether it's a new trial. That's understood your honor and if those are the options we believe it is a new trial situation. There was evidence presented throughout the case. All of the witnesses, two of the four witnesses who were involved in transactions told them what the purchase price was and they were told to lie about it. Two of them the issue was never mentioned and the purchase price of $100 or $200 was written in on the transaction. There were signs at the defendant's business saying it's a 7% sales tax. The head of the organization said don't worry about that, don't put it down. This was a part of the case. Was it the focus of the case? No, but it was in the case and it was offered as a theory essentially that is a minimum. The jury was told in closing argument at page 71, go through the purchase price. You're going to see a whole bunch of 100s, 200s, obvious misrepresentations of numbers. This was a theory in the case. This was one way that the jury was told you can get to a fraud conviction and it is a valid theory. So on a sufficiency of the evidence question, on a question of was there sufficient evidence in which the jury could find that these defendants conspired to commit mail fraud, the answer is yes, there was and there was also a whole bunch of invalid stuff and if the court does not believe, does not accept our waiver argument, then the court should remand for a new trial on the mail fraud counts. That would be the proper course of action in this case. There was shadiness and there was fraud and there was, the evidence suggested at sentencing there was $400,000 of tax fraud lost to the state of Indiana. Whatever errors and whatever mistakes the government made in this case, that is a loss and the punishment for the government for its prosecution in this case that was not well thought out should not be that the defendants walk free on crimes that they are guilty of. I can, I don't know that there is much point in discussing the sentencing arguments but I'm happy to your honor. The only thing that I would say on the sentencing arguments is that just in terms of future cases, what one looks at here is it should not be the size of the difference between the error and the end sentence that determines this court's application of harmless error. But you know we can't completely get away from that. My concern with your theory is it would simply be an instruction to every district court judge always simply to say at the end of the sentencing, this is my sentence, I believe this is reasonable I don't care how I got there, end of discussion. And you would erase the entire structure of the sentencing guidelines that the Supreme Court has constructed since Booker under which there is review of the accuracy of the sentencing guideline calculation and there's a sense of how do the 3553A factors discount that. Frankly this looks to me like the district judge was very uncomfortable with the conviction as a whole. He goes way down on sentence, has some vague sense something's going wrong. But that's not what you're supposed to do and the court has emphasized that the guidelines are real even in the post facto situation, the guidelines are really important. I understand your point Judge Wood and if the court views that as what the district court was doing then I think it would reverse the sentence even if it affirms the convictions. Plus his statement could have simply meant that he was trying to protect against a higher guideline range, not a lower one in terms of the blanket statement that he made. I don't read the sentencing that way Judge Williams. If the court does then it would not be left with a firm conviction and it would need to remain the sentence. But I do think that if a court says this is a 16 level enhancement and I've looked at it and I think it applies but whether it applies or not I'm going to impose this sentence that's maybe higher than the 0 and above the 16 in those instances the court shouldn't say well this is a 16 level enhancement, this is too high. If the court has firmly said what it means and I think if you look here the court was saying this doesn't really fit well under the guideline structure and the defendants are trying to come back and say well if you go under the guideline analysis that we do you leave out any fact that there was tax loss to the state of Indiana here. You leave out anything that shows that there were 2,500 aliens that were involved in this offense. We don't know how many aliens were involved in the offense. We have no idea. You're making the assumption that every one of these people was an illegal alien. I don't see where that comes from. I think that the district court was finding by preponderance of evidence that it was more likely than not. That every single one of them? I don't think that you've conceded that there are a lot of people who are A, aliens and perfectly lawful aliens who don't have social security numbers? This was targeted at people who had ITIN numbers and the vast majority of those people are going to be illegal aliens. This was targeted towards an illegal alien. But is that your common sense or from reading the New York Times? How do we know how many? I believe at least at the sentencing stage that the district court was able to find that information by a preponderance of the evidence. Based on what? There was no basis for it. Based on what hard evidence? Presumably you could go to federal records and the immigration authorities would have a table of aliens in the United States by category and whether that category could get a visa and you could work out how many aliens in the United States lawfully can't get SSNs and that you could compare that with the number of illegal aliens and put that information in the record. Is that information in the record? No, Your Honor. So it's just kind of a seat of the pants, which is not  I agree with that, Your Honor. Anything else, Mr. Holler? If the court has nothing else, I do not either, Your Honor. Thank you. Alright, thank you very much. So I think we have rebuttal time from Ms. Eisenman. Actually, Your Honor, unless the court has any questions, we'll rest on our briefs and just ask that both counts be vacated and judgments of acquittal be entered. Thank you. Alright, thank you very much. Ms. Garst, did you have anything further? And Mr. Ansell, your time had run out. Well, in that case, the court will take the case under advisement. You were appointed, as I recall, to represent your clients. We appreciate your help to your clients and to the court. Thank you. Thank you as well, Mr. Holler.